```
                 IN THE UNITED STATES DISTRICT COURT FOR
                 THE DISTRICT OF MARYLAND, NORTHERN DIVISION

                                  *
SPHERION CORPORATION
                                  *
       Plaintiff,
                                  *      CIVIL NO.: WDQ-04-2115
v.
                                  *
THE ROSEN GROUP, et al.,
                                  *
       Defendants.
                                  *

*      *      *      *      *      *      *      *      *      *      *      *      *
```

## Memorandum Opinion

Spherion Corporation ("Spherion") has sued the Rosen Group and Wendy Rosen for defamation. Defendants have counterclaimed, alleging breach of contract and negligent and intentional misrepresentation. Pending are the parties' cross motions for summary judgment and Defendants' motion for sanctions. For the following reasons, the motions will be denied.


## I.  Background

In February 2003, The Rosen Group, a Maryland corporation, contracted Spherion, a national staffing firm, to fill a position in Rosen's accounting department. Complaint, ¶ 15. Spherion recommended Rahiem Jackson, an accountant who claimed to be an Army veteran pursuing an MBA at Morgan State University. Counterclaim at ¶¶ 7-8. In March 2003, Rosen selected Jackson for the temporary assignment and permanently hired him soon

after.  *Id* at ¶¶ 11-13.

While working at the Rosen Group between March and July, 2003, Jackson stole and forged company checks totaling more than $127,000.  *Id* at ¶ 22.  As the Rosen Group later learned, Jackson had never enrolled at Morgan State, had been court martialled for stealing from the Army, and was suspected of stealing from his previous employer, the Salvation Army.  *Id* at ¶¶ 7-10.

The Rosen Group blamed Spherion for its losses and, according to Spherion, attempted to extort a settlement by threatening the company with legal action and a negative public relations campaign.  Complaint at ¶¶ 29-40.  Spherion claims that when it refused to pay, Rosen publicly attacked Spherion's business reputation in a July 2004 article in SmartCEO magazine, and forwarded that article to local businesses in an e-mail entitled, "Spherion Placed a Thief in My Business."  *Id* at ¶¶ 46-60.

In response, Spherion sued Rosen and the Rosen Group for defamation, alleging that the Defendants had publicly and falsely claimed that: 1) Jackson was out on bail when he was placed with the Rosen Group; 2) Spherion would have discovered that Jackson was a thief if they had contacted his references; 3) the Rosen Group's checks were securely stored; 4) Spherion refused to refund its placement fee; 5) Spherion was liable for Jackson's conduct; and 6) Spherion had deliberately referred a criminal to

the Rosen Group.  Plaint.'s Cross Motion for Summary Judgment, p. 15.

The Rosen Group counterclaimed, alleging that Spherion: 1) breached its contract with the Rosen Group by failing to screen Jackson before placing him; and 2) intentionally or negligently misrepresented its services and Jackson's qualifications.

II.  Rosen's Motion for Summary Judgment

Defendants have moved for summary judgment on Spherion's defamation claim arguing that Spherion has failed to establish a *prima facie* case.

A.  Standard of Review

Under Rule 56(c), summary judgment is appropriate when there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law.  *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).  A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  In considering a motion for summary judgment, "the judge's function is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  *Id* at 249.  Thus, "the judge must ask . . . whether a fair-minded jury

3

could return a verdict for the [nonmoving party] on the evidence presented." *Id.* at 252.

The court must view the facts and reasonable inferences drawn therefrom "in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, the opposing party must produce evidence upon which a reasonable fact finder could rely. *Celotex Corp. v. Catrett,* 477 U.S. 317 (1986). The mere existence of a "scintilla" of evidence is insufficient to preclude summary judgment. *Anderson*, 477 U.S. at 252.

Under Rule 56 a party is not entitled to summary judgment on part of a claim. *See Felix v. Sun Microsystems,* 2004 WL 911303, slip. op. (D.Md. 2004) *and cases cited therein*.


B.   *Prima Facie* Case of Defamation

To prove defamation under Maryland law, a plaintiff must establish that: 1) the defendant made a defamatory statement regarding the plaintiff to a third person; 2) the statement was false; 3) the defendant was legally at fault; and 4) the plaintiff suffered harm as a result. *Holt v. Camus,* 128 F.Supp.2d 812 (D.Md. 1999); *Peroutka v. Streng,* 116 Md. App. 301, 311 (Md. Ct. Spec. App. 1995). A defamatory statement is one that tends to expose a person to public scorn, hatred, contempt or ridicule, thereby discouraging others in the community from

4

having a good opinion of, or from associating or dealing with,

that person.  *Batson v. Shiflett*, 325 Md. 684, 722-723 (Md.

1992).


C.  Analysis

     Defendants argue for summary judgment on the grounds that:

1) several of the alleged statements are true or are not

defamatory; and 2) Spherion has failed to show damages.  Spherion

argues in response that: 1) the statements are actionable; and 2)

damages can be presumed.


1.  Statement Regarding Jackson's Bail Status

     Spherion claims it was defamed when the SmartCEO article

asserted, *inter alia,* that:

> Rosen assumed that a basic background check had been
> performed by the staffing firm she called on to place him.
> "When he applied for placement' says Rosen, 'the number one
> listing on his resume was the Salvation Army and they did
> not even call the Salvation Army.'  Had they called, they
> might have discovered that Jackson was out on bail.

Plaint. Ex. 12, p. 34.


     a.  Whether the Statement is Actionable

     Defendants argue that although Jackson had not been arrested

when he started work at the Rosen Group, the statement is

"substantially correct" and, therefore, not actionable, because

the Salvation Army suspected Jackson of theft and Spherion would

have learned of these suspicions if they had checked Jackson's references.

Minor inaccuracies do not amount to falsity if "the substance, the gist, the sting, of the libelous charge be justified." *Baston v. Shiflett,* 325 Md. 684 (Md. 1992); *citing Masson v. New Yorker Magazine,* 501 U.S. 496 (1991). However, the statement that Jackson was suspected of theft by a private citizen is not substantially the same as the statement that Jackson had been indicted and arrested.

Additionally, whether Spherion would have learned of the Salvation Army's suspicions if it had checked Jackson's references remains an issue for the jury. Jackson submitted his application to Spherion on February 11, 2003, and he was selected by the Rosen Group on February 27, 2003. Compl., ¶ 14; Plaint.'s Ex. 10. William Smith, a representative of the Salvation Army, testified that the Salvation Army first learned that funds were missing on February 12, 2003, and conducted an investigation during the week of February 20-27, 2003. It was not until February 27, 2003, that the Salvation Army filed a police report accusing Jackson of the crime. Smith Deposition, p. 19-21, 26-28. When the Salvation Army suspected Jackson of the theft and would have revealed these suspicions to Spherion (if it had asked), remains an issue for the jury.

6

b.   Damages

Defendants further argue that even assuming that the statement is actionable, Spherion has failed to show damages. Spherion argues in response that damages can be presumed.

Although a plaintiff must show damages to establish a *prima facie* case of defamation, damages are presumed where a statement is defamatory *per se* and made with actual malice.   *Hanlon v. Davis*, 76 Md. App. 339 (1988); *Samuels v. Tschechtelin*, 135 Md. App. 483, 549 (Md. Ct. Spec. App. 2000)., *Shapiro v. Massengill,* 105 Md. App. 743, 774 (Md. Ct. Spec. App. 1995).

A statement is defamatory *per se* if it charges a person with "fraud, indirect dealing or incapacity and thereby tends to injure him in his trade, profession or business." *Samuels v. Tschechtelin*, 135 Md. App. 483, 550 (Md. Ct. Spec. App. 2000). Whether a statement is defamatory *per se* is a question of law for the court.   *Tschechtelin*, 135 Md. App. at 548.

To show that a statement was made with "actual malice" the plaintiff must offer clear and convincing evidence, "that the defendant published the statement in issue either with reckless disregard for its truth or with actual knowledge of its falsity."[1]   *Shapiro,* 105 Md. App. at 772.   "Actual malice" cannot

---

[1] Importantly, fault can be based on negligence or actual malice.   *Samuels v. Tschechtelin*, 135 Md. App. 483, 544 (Md. Ct. Spec. App. 2000); *Shapiro,* 105 Md. App. at 772 (Md. Ct. Spec.

be established merely by showing that the statements were "erroneous, derogatory or untrue." *Capital-Gazette Newspapers v. Stack,* 293 Md. 528 (Md. 1982).

As the statement at issue accuses Spherion, a staffing agency, of placing a known thief in the Rosen Group's accounting department, the statement directly bears on the quality of Spherion's services. If false, therefore, the statement is defamatory *per se.*

Whether the statement was made with actual malice turns on whether Rosen made the statement with knowledge of its falsity or with reckless disregard of its truth or falsity.

Rosen claims that although she was aware that Jackson had been arrested for stealing from the Salvation Army, she never learned the date of his arrest or bail status. Rosen Affidavit, ¶ 5. Jackson, however, used a Rosen Group check to pay his bail bondsman on May 9, 2003. Rosen Group's Response in Opposition to the Cross-Motion for Summary Judgment, Ex. C. In an October 17, 2003, settlement agreement between the Rosen Group and its bank, the Rosen Group identified the check as one of several that Jackson had stolen. Plaint.'s Mot. For Summary Judgment, Ex. 18, ¶ 2, Schedule A. Additionally, the July 2004 SmartCEO article in which the statement appeared claimed that "Jackson wrote a [Rosen

---

App. 1995). When fault is based on negligence, however, actual damages must be proven. *Shapiro,* 105 Md. App. at 774.

Group] check to cover his bail bond." Plaint. Ex. 12, p. 34.

Clearly the Rosen Group had discovered that Jackson had stolen a Rosen Group check to pay his bail bondsman before the SmartCEO article was published in July, 2004. Assuming that Wendy Rosen was informed, and that it would be reasonable to infer that Jackson was arrested and released on bail around the time the check was dated, there remains a genuine issue whether Rosen was aware that the statement in issue was false when she published the article in July, 2004. Accordingly, summary judgment on Spherion's defamation claim as to the statement regarding Jackson's bail status will be denied.

2.  Other Statements

As summary judgment will not be granted to part of a claim, Defendants' motion for summary judgment of Spherion's entire defamation claim will be denied.

III.  Spherion's Motion for Summary Judgment

A.  Breach of Contract Claim

Spherion has moved for summary judgment on Defendants' breach of contract claim on the grounds that Spherion was not contracted to screen applicants and that even if was, it fulfilled its obligations by interviewing Jackson and reviewing his resume. The Rosen Group argues in response that there was an

implied contract between the parties that obligated Spherion to screen applicants and that this screening included checking the applicants' references.

An implied contract, or a contract implied-in-fact, is a contract that can be inferred from intention of the parties "as evidenced by the circumstances and the ordinary course of dealing and the common understanding of men." *County Commissioners of Caroline County v. J. Roland Dashiell & sons, Inc.,* 358 Md. 83 (Md. 2000); *Mass Transit Administration v. Granite Construction Co.,* 57 Md.App. 766, 774 (Md. 1984).  Although "no words of promise or agreement have been used, such transactions are nevertheless true contracts." *Alternatives Unlimited, Inc. v. New Baltimore City Bd. of School Com'rs,* 155 Md. App. 415 (Md. Ct. Spec. App. 2004).

Although there was no written contract between the parties, Spherion placed Jackson with the Rosen Group in return for a promise of payment; there was a contract between the parties. Whether the contract required Spherion to check the applicant's is unclear.

Spherion advertises that it provides "world-class...screening" and that it "delivers the most qualified candidates by automatically screening out unqualified applicants."  The Rosen Group Resp. in Opp. to Mot. for Summary

Judgment, Ex. A, p. 389, 397.  Michael Bettick, the Vice
President of Professional Recruiting at Spherion, testified that
the company had an internal policy requiring recruiters to check
an applicant's references prior to placement.  Bettick Dep. p.
36-38.  The Rosen Group's expert witness, Marshall Salsbury, and
Spherion employees Gail Smith, Erin Blaha and Stacie Abrahams,
all testified that performing reference checks before placement
is industry practice.  Salsbury Dep., p. 23; Smith Dep., p. 18;
Blaha Dep. p. 10; Abrahams Dep. p. 17.

The evidence suggests, therefore, that Spherion understood
the contract to include a requirement that it screen applicants
and that screening included a check of an applicant's references
prior to placement.  As it is undisputed that Spherion failed to
check Jackson's references, there remains a genuine issue whether
the contract was breached.  Accordingly, Spherion's motion for
summary judgment of the Rosen Group's breach of contract
counterclaim will be denied.


B.  Intentional Misrepresentation

The Rosen Group has counterclaimed for intentional
misrepresentation alleging that Spherion: 1) failed to inform the
Rosen Group that Jackson's references had not been checked; 2)
represented that Spherion "knew" Jackson and that he was
qualified; and 3) represented that Jackson's resume and letters

11

of recommendation were genuine (Count III of the Complaint).  The
Rosen Group alleges, in the alternative, that Spherion screened
Jackson and intentionally misrepresented his qualifications
(Count IV of the Complaint).

To prove intentional misrepresentation a plaintiff must
allege: 1) that the defendant made a false representation to the
plaintiff; 2) that its falsity was either known to the defendant
or that the representation was made with reckless indifference as
to its truth; 3) that the misrepresentation was made for the
purpose of defrauding the plaintiff; 4) that the plaintiff relied
on the misrepresentation and had the right to rely on it; and 5)
that the plaintiff was injured as a result of the
misrepresentation.  See *Harte-Hanks Direct Marketing/Baltimore,
Inc., v. Varilease Technology Finance Group, Inc.*, 299 F. Supp.
2d 505, 525 (D. Md. 2004)(quoting *Sass v. Andrew*, 152 Md. App.
406 (2003)).


1.  Count III

Spherion argues for summary judgment on the grounds that: 1)
Spherion did not assert a false statement; 2) Spherion did not
purposefully defraud the Rosen Group; 3) the Rosen Group did not
rely on the allegedly false statements; and 4) Spherion's
statements were not the proximate cause of the Rosen Group's
damages.

On February 24, 2003, the Rosen Group contacted Tony Wright, a recruiter at Spherion, to request an accountant.  Wright Dep., p. 60.  Wright recommended Jackson over other candidates, claiming that Stacie Abrahams, another Spherion recruiter, had worked with Jackson before and knew that he was "a good guy."  *Id* at p. 63-65.  Wright told Lisa Brice, the Rosen Group's Controller, that "you don't have to really interview him...we interviewed him...[Abrahams]...knows him."

Abrahams, however, denies telling Wright that she had worked with Jackson or that she could vouch for his qualifications. Abrahams Dep., p. 44.  Wright's assertions, therefore, were false; whether he made the statements with the knowledge that they were false or with the intent to defraud the Rosen Group remains an issue for the jury.

Given Wright's recommendation and the Rosen Group's selection of Jackson over the other candidates, and drawing all inferences in favor of the Rosen Group, there remains a genuine issue whether the Rosen Group relied on Wright's recommendation in selecting Jackson.

Spherion argues that even assuming that it misrepresented Jackson's qualifications, it was not the proximate cause of the Rosen Group's losses because the Rosen Group was contributorily negligent.  Spherion argues that the Rosen Group failed to properly secure its check stock or review its bank statements,

13

and this failure was the actual cause of its losses.

Although Jackson claimed to have stolen the checks from Rosen Group Controller Lisa Brice's office during the workday, Wendy Rosen testified that someone (presumably Jackson) had attempted to break into Brice's office after working hours. Rosen Dep., p. 141-142.  Accordingly, there remains a genuine issue as to how Jackson stole the checks and the extent to which added security or more vigilant bookkeeping would have prevented the theft.

Given these issues of fact, Spherion's motion for summary judgment on the Rosen Group's counterclaim for intentional misrepresentation will be denied.


2.  Count IV

Spherion has voluntarily moved to dismiss Count IV of the Complaint.  As the motion is unopposed, it will be granted.


C.  Negligent Misrepresentation

The Rosen Group claims in the alternative that Spherion negligently: 1) failed to inform the Rosen Group that Jackson's references had not been checked; 2) represented that Spherion "knew" Jackson and that he was qualified; and 3) represented that Jackson's resume and letters of recommendation were genuine.

To prove negligent misrepresentation the plaintiff must show

that the defendant: 1) owing a duty of care to the plaintiff
negligently asserted a false statement; 2) that the defendant
intended the plaintiff to act on; 3) that the defendant knew the
plaintiff would likely rely on and which would cause injury, if
erroneous; 4) the plaintiff justifiably relied on the statement;
and 5) the plaintiff suffered damage proximately caused by the
defendant's negligence. *Martens Chevrolet, Inc. v. Seney*
292 Md. 328 (Md. 1982).

Spherion argues that it: 1) did not owe defendants a duty of
care; 2) did not assert a false statement; 3) the Rosen Group did
not rely on the statements; and 4) Spherion's statements were not
the proximate cause of the Rosen Group's damages.

To show that a defendant owed a duty of care to the
plaintiff, the plaintiff must prove an "intimate nexus" between
the parties. *Suburban Mortg. Associates, Inc. v. Merrill Lynch
Mortg. Capital, Inc.*, 51 Fed. Appx. 381, slip op. (4th Cir.
2002); *21st Century Props. Co. v. Carpenter Insulation &
Coatings Co.*, 694 F.Supp. 148, 153 (D.Md. 1988). "This intimate
nexus is satisfied by contractual privity or its equivalent."
*Jacques v. First National Bank of Maryland,* 307 Md. 527, 534-535
(Md. 1988). As there remains a genuine issue whether there was
an implied contract between the parties, whether Spherion owed a
duty of care to the Rosen Group is an issue for the jury.

As Wright's assertions that Spherion had worked with Jackson and that he was a qualified candidate were false and because Wright had no basis for such assertions, there remains a genuine issue as to whether Wright acted negligently.

Additionally, as noted above, there remain genuine issues of fact whether the Rosen Group relied on Spherion's assertions and whether theses misrepresentations were the proximate cause of the Rosen Group's losses.  Accordingly, Spherion's motion for summary judgment on the Rosen Group's negligent misrepresentation counterclaim will be denied.


IV.  The Rosen Group's Motion for Sanctions

Defendants have moved for sanctions pursuant to Federal Rule of Civil Procedure 37(d)(1) on the grounds that Spherion failed to produce a Rule 30(b)(6) witness able to testify as to the Company's damages.  Defendants seek attorney's fees and an order prohibiting Spherion from introducing evidence of damages at trial.  Spherion argues in response that: 1) it has no knowledge of actual damages; and 2) sanctions are inappropriate because it attempted to resolve the dispute in good faith.

Under Rule 37(d)(1):

If...a person designated under Rule 30(b)(6) to testify on behalf of a party fails to appear before the officer who is

16

to take the deposition , after being served with proper
notice...the court...may make such orders in regard to the
failure as are just....

Federal Rule of Civil Procedure 37(d)(1).

When a witness designated by a corporation to testify on its
behalf cannot address relevant topics, the corporation has failed
to appear.  *Black Horse Lane Assoc. v. Dow Chemical Corp.*, 228
F.3d 275, 304 (3rd Cir. 2000)("If a 30(b)(6) witness is unable to
give useful information, he is no more present for the deposition
than would be a deponent who physically appears for the
deposition but sleeps through it").

Possible sanctions for Rule 37 violations include:

(A) An order that the matters regarding which the order was
made or any other designated facts shall be taken to be
established for the purposes of the action in accordance
with the claim of the party obtaining the order;
(B) An order refusing to allow the disobedient party to
support or oppose designated claims or defenses, or
prohibiting that party from introducing designated matters
in evidence;
(C) An order striking out pleadings or parts thereof, or
staying further proceedings until the order is obeyed, or
dismissing the action or proceeding or any part thereof, or
rendering a judgment by default against the disobedient
party...

Federal Rule of Civil Procedure 37(b)(2).

Spherion filed suit in July, 2004.  On December 1, 2005,
Defendants requested the deposition of Spherion's Rule 30(b)(6)
designee on nineteen different topics, including damages.  The

deposition was scheduled for December 20, 2005.  Defendants'
Motion for Sanctions, Ex. 5.

Spherion responded on December 14, 2005, claiming that
Spherion could not assess its financial losses by December 20,
2005, and that no corporate representative existed to testify as
to damages.  *Id* at Ex. 7.  Spherion proposed providing
supplemental information relating to damages after dispositive
motions were filed.  *Id* at Ex. 9.

On December 20, 2005, Michael Bettick was deposed as
Spherion's corporate designee but reiterated that he could not
testify as to damages.  On January 9, 2006, Spherion provided a
supplemental response to Defendants' interrogatories in which it
claimed that Spherion was entitled to punitive damages and
attorney's fees as a result of Defendants' defamation *per se*.
Spherion's Supplemental Response to Defendants' First Set of
Interrogatories, p. 3.

In February, 2006, Defendants communicated their intent to
move for Rule 37(d)(1) sanctions.  In response Spherion offered:
1) to provide Defendants written assurance that it would not
introduce evidence of damages other than presumed damages and
attorney's fees; 2) reopen the 30(b)(6) deposition; or 3) allow
Defendants to submit written interrogatories or deposition
questions relating to damages.  Spherion's Opp. to Mot. for

18

Sanctions, Ex. C, D.  Defendants declined these proposals and
filed their motion for sanctions on February 10, 2006.

 As noted above, Spherion contends that it has been defamed,
*per se*, and that Defendants made the defamatory statements with
actual malice.  Accordingly, Spherion need not prove actual
damages in order to prove defamation.  As Spherion seeks only
punitive damages and attorney's fees, Spherion's failure to
provide testimony as to actual financial losses at the 30(b)(6)
deposition does not constitute a failure to appear and,
therefore, is not sanctionable conduct.  Accordingly, Defendants'
motion for sanctions will be denied.


<u>May 5, 2006</u>                         <u>          /s/          </u>
Date                              William D. Quarles, Jr.
                                  United States District Judge

19